UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-000284-FDW

| | |
|---|---|
| RODCHA BRADLEY, | ) |
|     Plaintiff, | ) |
| vs. | ) |
| CAROLYN W. COLVIN, | )    ORDER |
|     Defendant. | ) |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 11), and Defendant's Motion for Summary Judgment (Doc. No. 14). Plaintiff seeks judicial review of an unfavorable administrative decision on her application for disability benefits. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED,** Defendant's Motion for Summary Judgment is **GRANTED,** and the Commissioner's decision is **AFFIRMED.**

## I.    FACTUAL BACKGROUND

Plaintiff filed Title II and Title XVI applications for disability benefits on May 27, 2011. (Tr. 285). Her claim was initially denied on September 21, 2011, (Tr. 98), and was denied upon reconsideration on November 29, 2011. (Tr. 108,111). At Plaintiff's request, an Administrative Law Judge ("the ALJ"), Ronald J. Feibus, held a hearing on July 12, 2012. (Tr. 51, 74). On July 20, 2012, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 87-88). On September 27, 2012, the Appeals Council remanded the case to the ALJ for further proceedings. (Tr. 93-94). The ALJ held another hearing on January

1

4, 2013. (Tr. 35). On January 11, 2013, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 28-29). Plaintiff timely requested review by the Appeals Council, which was denied on April 2, 2014, rendering the ALJ's January 11 decision the Commissioner's final decision in this case. (Tr. 1-6).

Plaintiff timely filed this action on June 2, 2014 (Doc. No. 1), and the parties' Motions for Summary Judgment are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g), and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision and (2) whether the Commissioner applied the correct legal standard. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)); Richardson v. Perales, 402 U.S. 389, 390 (1971); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)). Substantial evidence has be defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Perales, 402 U.S. at 401). In reviewing for substantial evidence, the Court may not reweigh the evidence, try the case de novo, make credibility determinations, or substitute its judgment for that of the Commissioner. See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456.

## III. ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled" under the Social Security Act ("the Act") between her application date and the date of the ALJ's decision.[1] Plaintiff has the burden of proving she was disabled within the meaning of the Social Security Act in ordered to be entitled to benefits. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

On July 20, 2012, and again on January 11, 2013, the ALJ found that Plaintiff was not "disabled" any time between May 27, 2011, which was her date of application, and the date of the ALJ's decision. (Tr. 87-88; 28-29). The Act provides a five-step sequential evaluation process ("SEP") for determining whether a person is disabled. 20 C.F.R. § 404.1520. If an individual is determined to be disabled or not disabled at a step, a decision is made and the adjudicator does not proceed to the next step. The five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement; (4) whether the claimant has the residual function capacity ("RFC") to perform the requirements of his past relevant work; and (5) whether the claimant is able to do any other work, considering his RFC, age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(i-v).

---

[1] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et. seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In this case, the ALJ determined that Plaintiff was not disabled under the fifth step of the evaluation process. (Tr. 27-28). The ALJ concluded that "based on the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" and therefore she was not disabled under the Social Security Act. (Tr. 27-28).

On appeal, Plaintiff presents three assignments of error: (1) that the ALJ erred when he determined that Plaintiff's dementia was a severe impairment but did not include any limitations caused by dementia in the residual functional capacity finding; (2) that the ALJ's determination that Plaintiff is limited to the mental demands of unskilled sedentary work was insufficient and not substantially supported by the evidence of record; and (3) that the ALJ erred when he did not give "good reasons" as to why he did not accept all or part of Dr. Bryant's opinion. (Doc. No. 12 at 5). However, a review of the record establishes that the ALJ did not commit error in finding that Plaintiff was not disabled.

### A. Residual Functional Capacity Finding

Plaintiff argues that the ALJ erred when he determined that Plaintiff's dementia was a severe impairment but did not include any limitations caused by dementia in the residual functional capacity (RFC) finding. (Doc. No. 12 at 5). According to SSR 96-3p, an impairment is considered "severe" if it "significantly <u>limits</u> an individual's physical or mental abilities to do basic work activities." Here, the ALJ determined that Plaintiff had a severe impairment of dementia established by medical evidence. (Tr. 18). Plaintiff argues that despite the finding of a severe impairment (dementia), the ALJ did not include any limitations in the RFC finding, which would be a logically inconsistent finding since by definition a "severe impairment" is one that

4

limits an individual's ability to do work. However, the ALJ did include limitations in the RFC. Specifically, he found "that the claimant has the residual functional capacity to perform the full range of unskilled sedentary work." (Tr. 19). "[A] restriction to unskilled work does constitute a limitation on an individual's functional capacity." Hughes v. Astrue, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011). Further,

> the ALJ's restriction of Plaintiff to unskilled work represents a limitation on Plaintiff's abilities to exercise judgment and perform more complex work duties. . . . . The determination of a 'severe' impairment at step two of the sequential evaluation process is a de minimis test . . . . A finding of de minimis limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step 4.

Id. (citing Bowen v. Yuckert, 482 U.S. 137 (1987); Sykes v. Apfel, 228 F.3d 259, 268 n. 12 (3d Cir. 2000). Because the ALJ limited Plaintiff to unskilled work based on the opinion of several medical experts, he did consider Plaintiff's limitation caused by dementia to the extent required by the Social Security regulations. As such, the Court finds no error.

### B. The ALJ's determination of Plaintiff's Mental Limitations

Plaintiff next argues that the ALJ erred in determining that Plaintiff was limited to unskilled, sedentary work because the ALJ did not specifically determine whether Plaintiff could meet the mental or "non-exertional" demands of unskilled, sedentary work. Plaintiff contends that the ALJ not only found that her dementia was a severe impairment, but also found that she had moderate difficulties in concentration, persistence or pace. (Tr. 18). Despite both of these findings, the ALJ determined that Plaintiff could perform unskilled, sedentary work, without specifically determining that she could meet the mental demands of that type of work, which "include the abilities to understand, carry out, and remember simple instructions; to respond

5

appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." (Doc. No. 12 at 8) (citing SSR 85-15). Plaintiff cites several relevant, though non-binding cases which hold that limiting the claimant to unskilled work does not necessarily take into account moderate limitations in concentration, persistence, or pace. (Doc. No. 12 at 10). Defendant contends that a finding that a claimant has moderate difficulties in concentration, persistence, or pace can be consistent with a limitation to unskilled work. (Doc. No. 15 at 6).

SSR 96-8p requires the ALJ to "identify the individual's functional limitations" and assess her "work-related abilities on a function-b-function basis" including physical abilities and mental abilities. The ability to non-exertional or non-physical tasks must be expressed in term of work related activities. For example, as stated above, work related mental activities "include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with charges in a routine work setting." SSR 96-8p.

Plaintiff contends that the ALJ must proceed in a function-by-function manner and navigate through each of the aforementioned example functions, evaluating Plaintiff's ability to perform each. However, the Regulation only instructs the ALJ to assess the individual's overall physical and mental limitations and restrictions first instead of immediately determining which exertional category the claimant falls into. This "function-by-function" determination is not as specific as Plaintiff argues. It is merely intended to prevent the ALJ from concluding the exertional category first, overlooking a physical or mental limitation the claimant has that could and should affect the exertional categorization.

Here, the record suggests that the ALJ did perform a function-by-function assessment of Plaintiff's mental capacity in a work setting. The ALJ cited to several opinions of medical experts, evidence which was specifically related to Plaintiff's metal capacities and limitations. (Tr. At 20-24). Based on this evidence, the ALJ concluded that Plaintiff was limited to unskilled work. The ALJ translated the medical evidence into work-related terms in the following paragraphs:

> Mr. Thompson opined the claimant . . . demonstrated moderate limitations in the function domains of understanding and remembering; concentration, persistence and pace; and adaptability to charges in the workplace routine.
>
> . . . DDS psychological consultant Jeffrey Bryant, Ph. D., opined the claimant retained the capacity to understand and perform simple and lower-level detailed tasks and to maintain concentration, persistence and pace on those types of tasks. Dr. Bryant advised the claimant could interact with co-workers, supervisors and the public on a regular basis; and, he concluded the claimant could adapt to infrequent changes in workplace routine and set goals.
>
> At the hearing, medical expert Rebecca Sweeney, Ph. D., concurred in these assessments.

(Tr. 26-27). Although the ALJ could have been clearer in dividing his discussion between the evidence he was considering for the exertional categorization ("sedentary") and the limitation to unskilled work, the conflagration of evidence weighing in favor of both findings does not require a finding of error. There is substantial evidence in the record to support a finding of unskilled work. Further, this finding specifically incorporates Plaintiff's limitations the ALJ found, that is, moderate limitations in concentration, persistence, or pace, and is supported by the findings of Dr. Bryant. Finally, substantial evidence supports a finding that the ALJ considered Plaintiff's functional limitations before he made the exertional categorization, as required by SR 96-8p. As such, there is no error.

**C. The ALJ's evaluation of Dr. Bryant's medical opinion**

Finally, Plaintiff argues that the ALJ erred in his treatment of Dr. Bryant's medical opinion. Plaintiff contends that because the ALJ "accepted" the assessment of Dr. Bryant, the ALJ was required to either include Plaintiff's limitations that Dr. Bryant found or explain why he did not include said limitations. The limitations included a moderate limitations on certain understanding, memory, concentration, persistence, and adaptation tasks. (Tr. 460-461). However, the limitations that Plaintiff cites to are found on a form that Dr. Bryant completed after his examination of the Plaintiff. This form, "the Mental Residual Functional Capacity Assessment form," is divided into three sections. Section I, which Plaintiff cites to, is the checklist part of the form. The Social Security Administration's Policy Memorandums ("POMS") "support a finding that an ALJ is not required to include each of the moderate limitations set forth in Section I of the Mental RFC assessment form . . . ." Pippen v. Astrue, 2010 WL 3656002, at *6 (W.D.N.C. Aug. 24, 2010). The POMS states

> The purpose of section I ("Summary Conclusion") [of the MRFC form] is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation . . . . <u>It is the narrative</u> written by the psychiatrist or psychologist <u>in section III</u> ("Functional Capacity Assessment") of the [MRFC form] <u>that adjudicators are to use as the assessment of RFC.</u> Adjudicators must take the RFC assessment <u>in section III</u> and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.

POMS DI 25020.010.B.1 (emphasis in original). Because the ALJ does not have to include the moderate limitations in Section I of the form, Plaintiff's argument is without merit. As such, there is no error.

The ALJ was required to evaluate the RFC assessment found in Section III of the form, in which Dr. Bryant found certain limitations, which the ALJ incorporated by limiting the Plaintiff to unskilled work. While the ALJ did not specifically address Dr. Bradley's finding that Plaintiff could adapt only to infrequent workplace changes, this error was harmless due to the Vocational Expert's testimony that a limitation to "infrequent change in [Plaintiff's] routine" would have no effect on the occupational base. (Tr. 47-48). See Keever v. Astrue, 2012 WL 245836, at *7 (W.D.N.C. June 1, 2012), adopted by 2012 WL 2449859 (W.D.N.C. June 27, 2012) (stating that remand is not necessary when it would not lead to a different result).

### IV. CONCLUSION

For the reasons stated above, the Court finds that the final decision of the ALJ conforms with applicable law and is supported by substantial evidence. **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Signed: January 7, 2015

Frank D. Whitney
Chief United States District Judge